1    KILPATRICK TOWNSEND & STOCKTON LLP
     CHRISTINA E. FAHMY (*Pro Hac Vice pending*)
2    607 14th Street, NW, Suite 900
     Washington , DC 20005-2018 USA
3    Telephone:   202-508-5800
     Facsimile:   202-508-5858
4
     DOUGLAS W. GILFILLAN (*Pro Hac Vice*)
5    dgilfillan@kilpatricktownsend.com
     1100 Peachtree Street NE, Suite 2800
6    Atlanta , GA 30309-4528 USA
     Telephone:   404-815-6500
7    Facsimile:   404-815-6555

8    RISHI GUPTA (State Bar No. 313079)
     rgupta@kilpatricktownsend.com
9    Two Embarcadero Center, Suite 1900
     San Francisco, CA  94111
10   Telephone:  415 576 0200
     Facsimile:  415 576 0300
11
     Attorneys for Defendant
12   NCR CORPORATION

13

14              **UNITED STATES DISTRICT COURT**

15          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

16

| | |
|---|---|
| 17  U.S. ALLIANCE GROUP, INC., a California corporation, | Case No. 8:22-CV-00980-FWS(KESx) |
| 18              Plaintiff, | **DEFENDANT NCR** |
| 19    v. | **CORPORATION'S SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES TO MOTION TO** |
| 20  NCR CORPORATION, a Delaware corporation; DOES 1 - 25, inclusive, | **DISMISS** |
| 21  jointly and severally, | Hearing Date:    July 28, 2022 |
| 22              Defendants. | Time:                10:00 a.m. Courtroom:        10D |
| 23 | Judge:        Hon. Fred W. Slaughter |
| 24 | |
| 25 | State Complaint filed April 1, 2022 Removed: May 12, 2022 |

26

27

28

NCR'S MEMORANDUM OF POINTS AND AUTHORITIES TO MOTION TO
DISMISS - Case No. 8:22-CV-00980-FWS(KESx)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................... 1

STATEMENT OF RELEVANT FACTS ................................................... 1

ARGUMENT ............................................................................................. 3

I.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE THIS
      COURT LACKS PERSONAL JURISDICTION OVER NCR. ............... 3

      A.    LEGAL STANDARD. ...................................................... 3

      B.    THIS COURT LACKS GENERAL JURISDICTION OVER NCR
            BECAUSE IT IS NOT AT HOME IN CALIFORNIA. .................. 5

      C.    THIS COURT DOES NOT HAVE SPECIFIC JURISDICTION
            OVER NCR BECAUSE PLAINTIFF'S CLAIMS DO NOT
            ARISE OUT OF NCR'S CONTACTS WITH CALIFORNIA. ........ 6

II.   THE COMPLAINT DOES NOT PLEAD ANY LEGALLY
      COGNIZABLE CLAIMS AGAINST NCR. ................................................ 9

      A.    LEGAL STANDARD. ......................................................... 9

      B.    PLAINTIFF FAILS TO STATE A CLAIM UNDER FEDERAL
            OR STATE ANTITRUST LAWS. ...................................... 9

            1.    Plaintiff Does Not Have Antitrust Standing. ...................... 10

            2.    The Conduct Plaintiff Alleges Is Procompetitive ................. 11

            3.    Plaintiff Has Not and Cannot Plead an Illegal Agreement
                  Involving NCR. .................................................... 13

            4.    Plaintiff Has Failed to Plead a Plausible Relevant Market. . 14

            5.    Plaintiff Does Not Allege the Elements of Monopolization
                  and Attempted Monopolization Claims. ........................... 15

            6.    Any Claims Involving the Doe Defendants Are Deficient ... 18

            7.    Plaintiff's Unfair Competition Claim Fails Because It Has
                  Other Adequate Remedies at Law And Plaintiff Has Failed
                  To Plead Facts Sufficient To State A Claim. ..................... 19

C.   PLAINTIFF'S REMAINING STATE LAW CLAIMS FAIL AS A MATTER OF LAW. ....................................................................21

  1.   Counts One And Two Fail To State A Claim.......................21

  2.   Counts Three and Four Fail To State A Claim.....................23

  3.   Count Ten Fails To State A Claim. .....................................25

III.  CONCLUSION. ..........................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## Cases

*Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*,
    No. 17-CV-03805-LHK, 2018 WL 1805516 (N.D. Cal. Apr. 16, 2018) ..... 25

*Arouchian v. Bank of Am., N.A.*,
    No. 12-CV-1028-PSGD(TBX), 2012 WL 12897038 (C.D. Cal. Oct. 11, 2012) ........................................................................................................... 25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................ 9

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
    874 F.3d 1064 (9th Cir. 2017) .................................................................... 4, 6

*Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Vill. Square Venture Partners*,
    52 Cal. App. 4th 867 (1997) ......................................................................... 23

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................ 9

*Best Fresh LLC v. Vantaggio Farming Corp.*,
    No. 3:21-CV-00131-BEN-WVG, 2021 WL 5444755 (S.D. Cal. Sept. 20, 2021) .......................................................................................................... 24

*Bhan v. NME Hospitals, Inc.*,
    929 F.2d 1404 (9th Cir. 1991) ..................................................................... 14

*BNSF Ry. Co. v. Tyrrell*,
    137 S. Ct. 1549 (2017) .................................................................................... 5

*Briosos v. Wells Fargo Bank*,
    737 F. Supp. 2d 1018 (N.D. Cal. 2010) ...................................................... 20

*Brown v. 140 NM LLC*,
    No. 17-CV-05782-JSW, 2019 WL 118425 (N.D. Cal. Jan. 7, 2019) ............ 8

*Cahen v. Toyota Motor Corp.*,
    147 F. Supp. 3d 955 (N.D. Cal. 2015) .......................................................... 6

*Caldrone v. Circle K Stores, Inc.*,
    No. 5:21-CV-749-GW-KK, 2021 WL 6496746 (C.D. Cal. Aug. 2, 2021) .... 5

*California v. Sutter Health Sys.*,
    130 F. Supp. 2d 1109 (N.D. Cal. 2001) ........................................................ 14

*Calistoga Civic Club v. Calistoga*,
    143 Cal. App. 3d 111 (1983) .................................................................... 25

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
    479 U.S. 104 (1986) (Sherman, Clayton Acts) ............................................ 10

*Cellular Plus, Inc. v. Super. Ct. of San Diego Cnty*,
    14 Cal. App. 4th 1224 (1993)....................................................................... 10

*Cel–Tech Commc', Inc. v. L.A. Cellular Telephone Co.*,
    20 Cal. 4th 163 (1999)................................................................................ 10

*Chavez v. Whirlpool Corp.*,
    93 Cal. App. 4th 363 (2001) ..................................................................... 20

*Chirila v. Conforte*,
    47 F. App'x 838 (9th Cir. 2002) ..................................................................... 8

*Conservation Force v. Salazar*,
    646 F.3d 1240 (9th Cir. 2011)........................................................................ 9

*Copperweld Corp. v. Independence Tube Corp.*,
    467 U.S. 752 (1984) .................................................................................... 19

*Crown Imps., LLC v. Superior Ct.*,
    223 Cal. App. 4th 1395 (2014)..................................................................... 22

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ..............................................................................*passim*

*Dang v. San Francisco Forty Niners*,
    964 F. Supp. 2d 1097 (N.D. Cal. 2013) (Sherman and Cartwright Acts)..... 14

*Desaigoudar v. Meyercord*,
    223 F.3d 1020 (9th Cir. 2000)..................................................................... 20

*DocMagic, Inc. v. Ellie Mae, Inc.*,
    745 F. Supp. 2d 1119 (N.D. Cal. 2010) ...................................................... 16

*Drink Tank Ventures LLC v. Real Soda in Real Bottles, Ltd.*,
    71 Cal. App. 5th 528 (2021)....................................................................... 23

*Dynatrace LLC v. Ramey*,
   No. 16-CV-01777-EMC, 2016 WL 7157650 (N.D. Cal. Dec. 8, 2016).........6

*Eastman Kodak  Co., v. Goodyear Tire & Rubber Co.*,
   114 F.3d 1547 (Fed. Cir. 1997),
   overruled in part on other grounds by Cybor Corp. v. FAS Techs., Inc.,
   138 F.3d 1448 (Fed. Cir. 1998).....................................................................11

*Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*,
   No. 5:20-CV-06846-EJD, 2021 WL 3037701 (N.D. Cal. July 19, 2021) ......8

*Evox Prods. LLC v. AOL Inc.*,
   No. 20-CV-2907-FMO-JEM, 2020 WL 3891457 (C.D. Cal. Apr. 14,
   2020).............................................................................................................6

*Expedited Packages, LLC v. Beavex Inc.*,
   No. 15-CV-00721-MMM-AGR, 2015 WL 13357436 (C.D. Cal. Sept.
   10, 2015).....................................................................................................24

*Fl. Seed Co., Inc. v. Monsanto Co.*,
   105 F.3d 1372 (11th Cir. 1997)...................................................................11

*Fleury v. Cartier Int'l*,
   No. 05-CV-4525-EMC, 2006 WL 2934089 (N.D. Cal. Oct. 13, 2006) .........4

*GDHI Marketing LLC v. Antsel Marketing LLC*,
   416 F.Supp. 3d 1189 (D. Colo. 2019) ..........................................................18

*GEC US 1 LLC v. Frontier Renewables, LLC*,
   No. 3:16-cv-01276 YGR, 2016 WL 4677585 (N.D. Cal. Sept. 7, 2016) .....24

*GENFIT S. A. v. CymaBay Therapeutics Inc.*,
   No. 21-CV-00395-MMC, 2022 WL 195650 (N.D. Cal. Jan. 21, 2022).......22

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) .............................................................................3, 4, 5

*GreenCycle Paint, Inc. v. PaintCare, Inc.*,
   250 F. Supp. 3d 438 (N.D. Cal. 2017) ..........................................................13

*Hicks v. PGA Tour, Inc.*,
   165 F. Supp. 3d 898 (N.D. Cal. Feb. 9, 2016),
   aff'd in part, vacated in part, 897 F.3d 1109 (9th Cir. 2018).....................20

*Hsu v. OZ Optics Ltd.*,
    211 F.R.D. 615 (N.D. Cal. 2002) ................................................................... 21

*In re German Automotive Manufacturers Antitrust Litigation*,
    497 F. Supp. 3d 745 (N.D. Cal. 2020) ........................................................ 14

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008).......................................................................... 9

*In re GlenFed, Inc. Sec. Litig.*,
    42 F.3d 1541 (9th Cir. 1994).......................................................................... 20

*In re Netflix Antitrust Litig.*,
    506 F. Supp. 2d 308 (N.D. Cal. 2007) ....................................................... 19

*Intel Corp. v. Fortress Inv. Grp. LLC*,
    511 F. Supp. 3d 1006 (N.D. Cal. 2021),
    *appeal filed*, No. 21-16817 (9th Cir. Oct. 28, 2021)................................... 17

*Jackson v. Ocwen Loan Servicing, LLC*,
    No. 2:10-CV-00711,-MCE-GGH 2010 WL 3294397 (E.D. Cal. Aug. 20,
    2010)................................................................................................................ 20

*John Lenore & Co. v. Olympia Brewing Co.*,
    550 F.2d 495 (9th Cir. 1977)......................................................................... 11

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009)....................................................................... 20

*Khalil v. Allstate Ins. Co.*,
    No. 2:20-CV-09409-MCS-JEM, 2021 WL 8315159 (C.D. Cal. June 28,
    2021)................................................................................................................ 21

*Kor. Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (Cal. 2003) ................................................................ 19, 23

*Krypt, Inc. v. Ropaar LLC*,
    No. 19-CV-03226-BLF, 2020 WL 32334 (N.D. Cal. Jan. 2, 2020) ............... 8

*Lange v. TIG Ins. Co.*,
    68 Cal. App. 4th 1179 (1998)....................................................................... 22

*Lorenzo v. Qualcomm Inc.*,
    603 F. Supp. 2d 1291 (S.D. Cal. 2009) ....................................................... 10

*Lund v. Albrecht*,
    936 F.2d 459 (9th Cir. 1991)........................................................................25

*Madrid v. Perot Sys. Corp.*,
    130 Cal. App. 4th 440 (2005).....................................................................19

*Marin Cnty Bd of Realtors, Inc. v. Palsson*,
    16 Cal.3d 920 (1976).....................................................................................9

*Marsh v. Anesthesia Servs. Med. Grp., Inc.*,
    200 Cal. App. 4th 480 (2011).....................................................................21

*Martinez v. Aero Caribbean*,
    764 F.3d 1062 (9th Cir. 2014)..................................................................5, 6

*Mattel, Inc. v. MGA Ent., Inc.*,
    616 F.3d 904, 909 (9th Cir. 2010),
    *as amended on denial of reh'g* (Oct. 21, 2010)............................................25

*N. Am. Chem. Co. v. Super. Ct.*,
    59 Cal.App. 4th 764 (1997)........................................................................22

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
    795 F.3d 1124 (9th Cir. 2015)....................................................................13

*National Fuel Gas Supply Corp. v. FERC*,
    468 F.3d. 831 (D.C. Cir. 2006) ..................................................................12

*Newport Components, Inc. v. NEC Home Electronics (U.S.A.), Inc.*,
    671 F.Supp. 1525 (C.D. Cal. 1987)............................................................18

*Nguyen v. Stephens Inst.*,
    529 F. Supp. 3d 1047 (N.D. Cal. 2021) .....................................................24

*NorthBay Healthcare Group, Inc. v. Kaiser Foundation Health Plan, Inc.*,
    No. 17-CV-5005-LB, 2017 WL 6059299 (Dec. 7. 2017, N.D. Cal.) ...........13

*Oakdale Vill. Grp. v. Fong*,
    43 Cal. App. 4th 539 (1996).......................................................................23

*Parnell Pharms., Inc. v. Parnell, Inc.*,
    No. 5:14-CV-03158-EJD, 2015 WL 5728396 (N.D. Cal. Sept. 30, 2015).....2

*Philips v. Ford Motor Co.*,
    No. 14-CV-2989-LHK, 2015 WL 4111448 (N.D. Cal. July 7, 2015)..........19

*Picot v. Weston*,
    780 F.3d 1206 (9th Cir. 2015)............................................................ 3

*Prime Healthcare Serv., Inc. v. Service Emps. Int' Union*,
    11-CV-2652-GPC-RBB, 2013 WL 3873074 (July 25, 2013) .............. 17, 18

*Reilly v. Apple Inc.*,
    No. 21-cv-04601-EMC, 2022 WL 74162 (N.D. Cal. Jan. 7, 2022)........ 14, 15

*Reyn's Pasta Bella, LLC v. Visa U.S.A.*,
    259 F. Supp. 2d 992 (N.D. Cal. 2003) ........................................... 11

*Reynolds v. Binance Holdings Ltd.*,
    481 F. Supp. 3d 997 (N.D. Cal. 2020) ............................................ 8

*Rhynes v. Stryker Corp.*,
    No. 10-5619 SC, 2011 WL 2149095 (N.D. Cal. May 31, 2011) ................. 19

*Sciara v. Campbell*,
    840 F. App'x 920 (9th Cir. 2020) ................................................... 7

*Sec. & Exch. Comm'n v. Jammin Java Corp.*,
    No. 2:15-CV-08921-SVW-MRW, 2016 WL 6595133 (C.D. Cal. July 18, 2016)................................................................................... 7

*Senne v. Kan. City Royals Baseball Corp.*,
    105 F. Supp. 3d 981 (N.D. Cal. 2015) ........................................... 6

*Sierra Wine & Liquor Co. v. Heublein, Inc.*,
    626 F.2d 129 (9th Cir. 1980)....................................................... 11

*Soundgarden v. UMG Recordings, Inc.*,
    No. 2:19-CV-05449-JAK-JPR, 2020 WL 1815855 (C.D. Cal. Apr. 6, 2020)................................................................................... 23

*Spectrum Sports, Inc. v. McQuillan*,
    506 U.S. 447 (1993) ................................................................. 18

*Tomac, Inc. v. Coca-Cola Co.*,
    418 F.Supp. 359 (C.D. Cal. 1976).................................................. 12

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*,
    No. 14-CV-03466-MMM-JPR, 2015 WL 12752879 (C.D. Cal. July 2, 2015)................................................................................... 8

*United States v. Columbia Steel Co.*,
    334 U.S. 495 (1948) ................................................................... 12

*Vallarta v. United Airlines, Inc.*,
    497 F. Supp. 3d 790 (N.D. Cal. 2020) ........................................ 5

*W. Air Charter, Inc. v. Sojitz Corp.*,
    No. 18-CV-7361-JGB (KSX), 2019 WL 4509304 (C.D. Cal. May 2,
    2019) ........................................................................................ 22

*Walden v. Fiore*,
    571 U.S. 277 (2014) .................................................................... 7

*Wescott v. Reisner*,
    No. 17-CV-06271-EMC, 2018 WL 2463614 (N.D. Cal. June 1, 2018) ......... 7

*Williams v. Yamaha Motor Co.*,
    851 F.3d 1015 (9th Cir. 2017) ............................................... 4, 8

**Statute**

Cal. Bus. & Prof. Code § 17200 ................................................... 20

**Rules & Regulations**

Fed. R. Civ. P. 9(b) ..................................................................... 20

Fed. R. Civ. P. 12(b)(2) ........................................................... 1, 3

Fed. R. Civ. P. 12(b)(6) ................................................................. 9

**Other Authorities**

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of
    Antitrust Principles and Their Application*, ¶1133a (4th and 5th Editions
    2015-2021) ............................................................................ 12

1

**INTRODUCTION**

2    Plaintiff's claims against NCR are based on NCR's acquisition of two non-

3  party foreign companies months after those two companies stopped doing business

4  with Plaintiff.  NCR is not "at home" in California and therefore not subject to

5  general jurisdiction in this forum. *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19

6  (2014).  Moreover, Plaintiff's claims do not arise out of or relate to any forum-

7  related contact, purposeful or otherwise, by NCR. Accordingly, NCR is not subject

8  to specific jurisdiction in this case, which should be dismissed in its entirety under

9  Rule 12(b)(2).

10    Moreover, Plaintiff's bald and conclusory allegations fail to allege a claim for

11  relief against NCR.  Plaintiff's antitrust and unfair competition claims fail because,

12  among other things, Plaintiff fails to allege antitrust injury and therefore standing to

13  sue, a plausible relevant market, or sufficient facts to show that NCR engaged in any

14  unlawful conduct. Moreover, the conduct of which Plaintiff complains is

15  procompetitive. With regard to Plaintiff's state-law tort and constructive trust

16  claims, Plaintiff has failed to allege facts required to support each of these claims.

17    Plaintiff admits that it has no facts showing NCR's involvement in the

18  conduct that allegedly harmed Plaintiff, alleging without explanation that it hopes to

19  obtain such facts in discovery.  This Court should deny Plaintiff's improper attempt

20  to use the Court's discovery powers to harass NCR and conduct a fishing

21  expedition, and, given that the Complaint is still legally insufficient despite having

22  been amended, dismiss Plaintiff's claims with prejudice.

23

**STATEMENT OF RELEVANT FACTS**

24    The First Amended Complaint ("Complaint") alleges that Plaintiff, a

25  California citizen, provides a variety of electronic payment processing services,

26  including cryptocurrency processing services. (First Am. Compl. ¶ 21) ("FAC").[1]

27  _____

28  [1] Although the Court must accept the well-pleaded factual allegations of the
   Complaint as true solely for purposes of this motion to dismiss, the Court should

NCR'S MEMORANDUM OF POINTS AND AUTHORITIES TO MOTION TO
DISMISS - Case No. 8:22-CV-00980-FWS(KESx)                    - 1 -

Between 2008 and March 15, 2021, Plaintiff alleges what amounted to an annual, renewable contract with Cardtronics USA, Inc. ("Cardtronics"), a company that purportedly operated over 200,000 ATMs in the United States and that also provided different types of payment processing services. *(¶¶ 8, 36-37).* Pursuant to this contract, Plaintiff referred merchants to Cardtronics, which provided processing services on the consumer side, or "frontend," of ATM transactions.  (¶¶ 38-40). To settle and complete the full ATM transaction, Plaintiff provided processing services on the merchant side, or "backend," of ATM transactions for merchants that it referred to Cardtronics. (¶ 40).

In July 2017, Plaintiff entered into a contractual relationship with LibertyX, a "cryptocurrency group," to provide that company with ATM processing services for cryptocurrency transactions.  (¶¶ 7, 44-45).  In the same month, Plaintiff began providing LibertyX cryptocurrency accounts to Cardtronics, for it to provide ATM processing services. (¶ 46).  Plaintiff claims that it developed LibertyX's cryptocurrency business into 28,484 "Crypto-ATM merchant locations." (¶ 49). Plaintiff alleges without explanation that it had "a 5% interest," "contractual 5% interest," or "vested business interest" in LibertyX.  (¶¶ 7, 69, 75).

On March 15, 2021, Cardtronics ended its business relationship with Plaintiff. (¶ 51). On March 17, 2021, LibertyX provided notice to USAG that it was terminating "most" of its agreements with USAG.  (¶ 52).

On June 21, 2021, NCR acquired Cardtronics and on January 13, 2022, acquired LibertyX.  (¶¶ 25, 29, 63, 64). Plaintiff admits that "NCR had absolutely no foothold in the crypto-ATM market" prior to these acquisitions. (¶ 31).  The Complaint alleges in bald general statements and legal conclusions that NCR was

---

disregard "general and conclusory" allegations, which comprise all or almost all of the allegations against NCR, including in assessing whether NCR is subject to personal jurisdiction in this case.  *See Parnell Pharms., Inc. v. Parnell, Inc.*, No. 5:14-CV-03158-EJD, 2015 WL 5728396, at *4 (N.D. Cal. Sept. 30, 2015) (disregarding "general and conclusory allegations" in personal jurisdiction analysis).

1  involved in the ending of Plaintiff's relationship with Cardtronics and LibertyX.

2  (¶¶ 9, 34-35, 53-62). The Complaint does not allege facts supporting its conclusory

3  allegations, instead alleging that Plaintiff hopes to find such information in

4  discovery. (¶¶ 57, 61, 73).

5       With regard to the Court's personal jurisdiction over NCR, Plaintiff, a

6  California resident, alleges that it suffered harm in California but does not allege

7  facts connecting NCR to such harm.  Although alleging that "a substantial part of

8  the events or omissions" giving rise to Plaintiff's claims occurred in this district,

9  where NCR "aimed its acts," (¶ 20), Plaintiff does not allege any supporting facts

10  for these conclusions. NCR is incorporated in Maryland and has its principal place

11  of business in Georgia. (Declaration of Donald W. Layden, Jr., Exhibit A at ¶ 3).

12  Before and after its acquisition by NCR, Cardtronics was a Delaware corporation

13  with its principal place of business in Texas; similarly, LibertyX was a Delaware

14  corporation with its principal place of business in Florida. (Ex. A at ¶¶ 5, 7).

15  Plaintiff does not allege that NCR's acquisitions occurred in or were intentionally

16  directed to California; in fact, none of NCR's actions taken in connection with these

17  acquisitions occurred in or were specifically directed at California.  (*Id.* at ¶¶ 6, 8).

18  **ARGUMENT**

19  **I.**    **THE COMPLAINT SHOULD BE DISMISSED BECAUSE THIS**

20            **COURT LACKS PERSONAL JURISDICTION OVER NCR.**

21      **A.**    **LEGAL STANDARD.**

22       A complaint must be dismissed under Fed. R. Civ. P. 12(b)(2) if the Court

23  lacks personal jurisdiction over a party to the suit, which Plaintiff bears the burden

24  of establishing.  *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015).  This Court

25  has general jurisdiction over a foreign corporation, such as NCR, to "hear any and

26  all claims against" it when such a corporation is "essentially at home in the forum

27  State."  *Daimler AG*, 571 U.S. at 127 (quoting *Goodyear Dunlop Tires Operations,*

28  *S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  A corporation is "at home" for purposes

of general jurisdiction in the state or states where it is incorporated and where it has its principal place of business. *Daimler AG*, 571 U.S. at 139 n. 19; *see also Goodyear*, 564 U.S. at 924 (holding that the "paradigm forum" for general jurisdiction over a corporation is the place of incorporation or principal place of business)

"Specific jurisdiction, on the other hand, depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State." *Goodyear*, 564 U.S. at 919 (alteration in original) (citation omitted). In order to exercise specific jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (citation omitted).

Three requirements must be met for the exercise of specific jurisdiction: "(1) the defendant must either 'purposefully direct his activities' toward the forum or 'purposefully avail[ ] himself of the privileges of conducting activities in the forum'; (2) 'the claim must be one which arises out of or relates to the defendant's forum-related activities'; and (3) 'the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.'" *Id.* (alteration in original) (citation omitted). The "purposeful direction test" of the first element, which applies to the claims alleged here, requires a plaintiff to show that the "defendant must have '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Id.* at 1069 (citation omitted) (tort claims); *Fleury v. Cartier Int'l*, No. 05-CV-4525-EMC, 2006 WL 2934089, at *2 (N.D. Cal. Oct. 13, 2006) (antitrust claims).

In determining jurisdiction here, the Court should disregard Plaintiff's general statements and conclusory allegations. *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 n.5 (9th Cir. 2017) (disregarding "conclusory legal statement unsupported by any factual assertion" in jurisdictional analysis).

**B.    THIS COURT LACKS GENERAL JURISDICTION OVER NCR BECAUSE IT IS NOT AT HOME IN CALIFORNIA.**

NCR is not "at home" in California because it is not incorporated in and does not have its principal place of business in the state.  As a result, this Court does not have general jurisdiction over NCR to hear the claims alleged in the Complaint.  *See Daimler AG*, 571 U.S. at 127, 139 n.19.  While general jurisdiction "does not lie just because a defendant 'engages in a substantial, continuous, and systematic course of business' in the forum," the Complaint here does not even allege facts showing that much as to NCR. *Vallarta v. United Airlines, Inc.*, 497 F. Supp. 3d 790, 799 (N.D. Cal. 2020) (quoting *Daimler AG*, 571 U.S. at 138-39); *see also Goodyear*, 564 U.S. at 927 ("A corporation's 'continuous activity of some sorts within a state,' is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.") (citation omitted).

Plaintiff's bald allegations that NCR is authorized to do and transacts business in California are insufficient for this Court to exercise general jurisdiction over NCR. *See*, *e.g.*, *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) (holding that state court lacked jurisdiction over railroad not incorporated or having its principal place of business there, despite over 2,000 miles of track and 2,000 employees in the state); *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (affirming finding of no general jurisdiction over defendant who had contracts with California companies worth between $225 and $450 million, sent employees to California, and other business in California); *Caldrone v. Circle K Stores, Inc.*, No. 5:21-CV-749-GW-KK, 2021 WL 6496746, at *4 (C.D. Cal. Aug. 2, 2021) (national brand not at home in state despite extensive business, a regional office, and generation of most profits on certain fuel there); *Vallarta*, 497 F. Supp. 3d at 799 (no general jurisdiction over airline that "conducts substantial business in California through 'two hub airports' . . . and by employing a substantial number of employees" there) (citation omitted); *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 964 (N.D.

1  Cal. 2015) (no general jurisdiction over national car manufacturer); *Senne v. Kan.*

2  *City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1018 (N.D. Cal. 2015) (California

3  "cannot be considered home" to any of multiple sports teams that regularly traveled

4  to, conducted business with, engaged in activities in, and have employees based in

5  California); *cf. Dynatrace LLC v. Ramey*, No. 16-CV-01777-EMC, 2016 WL

6  7157650, at *5 (N.D. Cal. Dec. 8, 2016) (asserting general jurisdiction over party

7  where evidence showed that party's principal place of business was in California).

8  For the same reasons, Plaintiff has not alleged any facts showing that this is

9  an exceptional case for the exercise of general jurisdiction even though NCR is not

10  at home in  the forum. *See, e.g.*, *Martinez*, 764 F.3d at 1070 (citing *Daimler*, 571

11  U.S. at 139 n.19); *Cahen*, 147 F. Supp. 3d at 965 (finding that plaintiffs did not

12  allege facts "to support the proposition that California can be considered Ford's

13  surrogate place of incorporation or temporary place of business" so as be an

14  exceptional case).

15  **C.   THIS COURT DOES NOT HAVE SPECIFIC JURISDICTION**

16  **OVER NCR BECAUSE PLAINTIFF'S CLAIMS DO NOT ARISE**
   **OUT OF NCR'S CONTACTS WITH CALIFORNIA.**

17

18  Although Plaintiff alleges 12 causes of action against NCR arising from its

19  acquisition of Cardtronics and LibertyX, the Complaint does not allege any "suit-

20  related facts" as to NCR that "create a substantial connection with" California or

21  that satisfy the applicable "purposeful direction" test. *Axiom Foods, Inc.*, 874 F.3d at

22  1068-69 (citation omitted).  Simply put, Plaintiff alleges no facts regarding NCR

23  supporting its bald and conclusory allegations, much less facts sufficient to show an

24  intentional act by NCR expressly aimed at California or forum-related activities

25  giving rise to this suit. *See Evox Prods. LLC v. AOL Inc.*, No. 20-CV-2907-FMO-

26  JEM, 2020 WL 3891457, at *2 (C.D. Cal. Apr. 14, 2020) (finding bald allegation

27  that defendants' "conduct that gives rise to this action has occurred in" California

28  insufficient to assert jurisdiction); *Sec. & Exch. Comm'n v. Jammin Java Corp.*, No.

1   2:15-CV-08921-SVW-MRW, 2016 WL 6595133, at *2  (C.D. Cal. July 18, 2016)

2   (refusing to accept "unreasonable inferences" or "legal conclusions" and finding no

3   jurisdiction over owners of companies that allegedly engaged in suit-related

4   conduct).

5        Plaintiff's only factual allegations about NCR concern its purchases of

6   Cardtronics and LibertyX, although Plaintiff alleges no facts showing that these

7   transactions were "expressly aimed" at Plaintiff or California. To the contrary,

8   consistent with the facts that Plaintiff does allege (press releases silent as to Plaintiff

9   and California), these deals did not occur in and were not directed at California. (Ex.

10  A at ¶¶ 5-8). And of course, NCR did not even acquire Cardtronics and LibertyX

11  until *months* after the conduct that Plaintiff alleges harmed it. (FAC ¶¶ 25, 29).

12       Plaintiff's bald allegations concerning NCR, including that NCR "directed"

13  Cardtronics to port Plaintiff's merchants and give LibertyX access to Plaintiff's

14  information, (FAC ¶¶ 59-60), do not allege that these purported actions were aimed

15  at, occurred in, or connected to California in any way other than that Plaintiff

16  allegedly suffered harm there. That Plaintiff, a California resident, was allegedly

17  harmed by some purported NCR action elsewhere is insufficient to show purposeful

18  direction. *See Walden v. Fiore*, 571 U.S. 277, 290 (2014) ("The proper question is

19  not where the plaintiff experienced a particular injury or effect but whether the

20  defendant's conduct connects him to the forum in a meaningful way."); *Sciara v.

21  Campbell*, 840 F. App'x 920, 923 (9th Cir. 2020) (holding that express aiming

22  argument resting "on the fact that [plaintiff] is a Nevada resident" is insufficient).

23       Moreover, Plaintiff's bald, general and conclusory allegations of conspiracy

24  and concerted action do not support jurisdiction because Ninth Circuit courts "have

25  refused to exercise personal jurisdiction over defendants" based on actions by

26  alleged co-conspirators. *Wescott v. Reisner*, No. 17-CV-06271-EMC, 2018 WL

27  2463614, at *4 (N.D. Cal. June 1, 2018) (collecting cases); *UMG Recordings, Inc. v.

28  Glob. Eagle Ent., Inc.*, No. 14-CV-03466-MMM-JPR, 2015 WL 12752879, at *8

1   (C.D. Cal. July 2, 2015) (California state and federal courts "have rejected" a

2   conspiracy theory of personal jurisdiction) (collecting cases); *see also Brown v. 140*

3   *NM LLC*, No. 17-CV-05782-JSW, 2019 WL 118425, at \*5 (N.D. Cal. Jan. 7, 2019)

4   (same). Similarly, allegations of "knowledge and consent" to the actions of others,

5   though Plaintiff does not even allege facts showing this much as to NCR, "do not

6   constitute intentional acts directed at the forum state."  *Chirila v. Conforte*, 47 F.

7   App'x 838, 842 (9th Cir. 2002).

8     Even if the Court were to consider whether conspiracy or concerted action

9   allegations may support the exercise of jurisdiction, the Complaint's allegations

10   regarding NCR are far too broad, general, and conclusory to establish personal

11   jurisdiction here, whether general or specific. *See Krypt, Inc. v. Ropaar LLC*, No.

12   19-CV-03226-BLF, 2020 WL 32334, at \*4-5 (N.D. Cal. Jan. 2, 2020) (finding bare

13   allegations that defendants worked "in concert to design and execute a plan" legally

14   insufficient); *Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, No. 5:20-

15   CV-06846-EJD, 2021 WL 3037701, at \*9 (N.D. Cal. July 19, 2021) ("bare

16   allegation" of conspiracy with others who acted in the forum "do[es] not confer

17   jurisdiction"). Nor can Plaintiff establish jurisdiction here based on an alter ego or

18   agency theory because Plaintiff alleges no facts showing the nature of the

19   relationship between NCR and the two companies it eventually acquired (putting

20   aside that such acquisitions happened months after the end of Plaintiff's business

21   with those two companies). *See Williams*, 851 F.3d at 1025 n.5 (9th Cir. 2017)

22   (holding that even assuming such theory survives *Daimler*, plaintiffs did not

23   sufficiently allege facts establish subsidiary was parent's alter ego and did not allege

24   sufficient control to establish agency); *Reynolds v. Binance Holdings Ltd.*, 481 F.

25   Supp. 3d 997, 1004 (N.D. Cal. 2020) (no jurisdiction under alter ego theory where

26   factual allegations did not show unity of interest or other requirements).

27     This Court should refuse to exercise jurisdiction over NCR here and dismiss

28   this case in its entirety.

## II. THE COMPLAINT DOES NOT PLEAD ANY LEGALLY COGNIZABLE CLAIMS AGAINST NCR.

### A. LEGAL STANDARD.

Dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). When considering a Rule 12(b)(6) motion to dismiss, a court must accept well pleaded "factual matter" in a complaint as true, but need not accept "bald allegations" or "legal conclusions," or "naked assertion[s] devoid" of factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (alteration in original); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating plaintiff must provide "more than labels and conclusions"). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. If the facts alleged do not support a reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed. *Id.* at 678-79; *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (stating a court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

### B. PLAINTIFF FAILS TO STATE A CLAIM UNDER FEDERAL OR STATE ANTITRUST LAWS.

Plaintiff attempts to contort NCR's legitimate business conduct and independent conduct by Cardtronics and LibertyX into seven antitrust claims, Counts 5-9, 11, and 12, all of which fail as a matter of law. [2]

---

[2] Because the Cartwright Act is patterned after Sherman Act, "federal cases interpreting the Sherman Act are applicable to problems arising under the Cartwright Act." *Marin Cnty Bd. of Realtors, Inc. v. Palsson*, 16 Cal. 3d 920, 925 (1976).

1

### 1.     Plaintiff Does Not Have Antitrust Standing.

2      Plaintiff's antitrust theory is vague and convoluted at best, shifting throughout

3   the Complaint.  In some of the counts, Plaintiff asserts that the basis for antitrust

4   liability is the acquisition agreements between LibertyX, Cardtronics, and NCR.

5   (FAC ¶¶ 119, 122, 126, 131, 161-166).  In other parts of the Complaint, Plaintiff

6   insinuates, without any specific allegations in support, that NCR was somehow

7   involved in Cardtronics' and LibertyX's pre-acquisition decisions to terminate

8   Plaintiff, which predated the acquisitions by months. Elsewhere, Plaintiff claims that

9   the "unlawful scheme *first* culminated with NCR directing Cardtronics' instant

10  porting of all" 28,484 of Plaintiff's cryptocurrency merchants into a direct

11  processing relationship with LibertyX and Cardtronics. (¶ 59) (emphasis added).

12      Whatever the theory, Plaintiff lacks standing to sue. The antitrust laws are for

13  'the protection of *competition*, not *competitors*.'" *Cargill, Inc. v. Monfort of

14  Colorado, Inc.*, 479 U.S. 104, 110 (1986) (Sherman, Clayton Acts); *see also Cel–

15  Tech Commc', Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 186 (1999)

16  (Cartwright Act).  To have standing to sue under the federal or state antitrust laws,

17  Plaintiff must allege an antitrust injury, "which is to say injury of the type the

18  antitrust laws were intended to prevent and that flows from that which makes

19  defendants acts unlawful." *Cargill*, 479 U.S. at 109; *see also Lorenzo v. Qualcomm

20  Inc.*, 603 F. Supp. 2d 1291, 1302 (S.D. Cal. 2009) (quoting *Cellular Plus, Inc. v.

21  Super. Ct. of San Diego Cnty.*, 14 Cal. App. 4th 1224, 1234 (1993)).

22      Plaintiff claims, variously, that it suffered harm in the form of lost business due

23  to (1) the NCR acquisitions; and/or (2) the Cardtronics and LibertyX terminations

24  and subsequent porting of merchant data, which it claims NCR somehow directed.

25  Neither constitutes antitrust injury.  Plaintiff's alleged harm (the loss of the

26  LibertyX business) results from the terminations of the business relationships

27  between Cardtronics, LibertyX, and Plaintiff.  Courts have held that the mere

28  termination of business relationships does not constitute antitrust injury.  *See Sierra*

1   *Wine & Liquor Co. v. Heublein, Inc.*, 626 F.2d 129, 132-33 (9th Cir. 1980); *John*

2   *Lenore & Co. v. Olympia Brewing Co.*, 550 F.2d 495 (9th Cir. 1977) .

3       Attempting to couch the terminations as stemming from or related to the

4   acquisitions changes nothing from an antitrust standpoint. Courts have repeatedly

5   explained that mergers and acquisitions often have a negative impact on displaced

6   suppliers and distributors, but that does not constitute antitrust injury, or make the

7   transaction anticompetitive. *Fla. Seed Co., Inc. v. Monsanto Co.*, 105 F.3d 1372,

8   1374-75 (11th Cir. 1997).  This is true even when the complaining entity is

9   terminated and loses all the business. *Id.*  Moreover, courts have held that where, as

10  here, the injury pled is attributable to conduct that could have occurred absent an

11  acquisition, it cannot form the basis for an antitrust claim even under Clayton Act

12  Section 7. *See Eastman Kodak  Co. v. Goodyear Tire & Rubber Co*., 114 F.3d 1547

13  (Fed. Cir. 1997), *overruled in part on other grounds by Cybor Corp. v. FAS Techs.,*

14  *Inc.*, 138 F.3d 1448 (Fed. Cir. 1998) (*en banc*) (holding that where injury was due to

15  conduct that would have occurred absent the acquisition, there was no Clayton Act

16  claim because the injuries "did not occur 'by reason of' that which made the

17  acquisition allegedly anticompetitive"); *see also Reyn's Pasta Bella, LLC v. Visa*

18  *U.S.A.,* 259 F. Supp. 2d 992, 1003-04 (N.D. Cal. 2003) "[t]he regulation of

19  agreements . . .  between business are not contained in the text of section 7 of the

20  Clayton Act, which deals exclusively with acquisitions by businesses.").  LibertyX

21  and Cardtronics could have terminated Plaintiff at any time, and Plaintiff would

22  have suffered the same harm.  No matter how Plaintiff couches its claim, it has not

23  and cannot plead antitrust injury, so all of its antitrust claims must be dismissed.

24          **2.      The Conduct Plaintiff Alleges Is Procompetitive.**

25       The behavior Plaintiff complains of is procompetitive and does not violate the

26  antitrust laws.  Plaintiff claims that the basis for the antitrust violations is: (1) the

27  Cardtronics and LibertyX acquisitions (FAC ¶¶ 119, 122, 126, 131, 161-166);

28  and/or (2) Cardtronics, LibertyX and NCR providing services in-house that

1   Cardtronics and LibertyX previously contracted with Plaintiff to provide.  Either

2   way, the conduct constitutes nothing more than a legitimate vertical business

3   integration, which does not violate the antitrust laws.

4        As Plaintiff admits, NCR had no foothold in the crypto ATM business prior to

5   the Cardtronics and LibertyX acquisitions, (¶ 31), and engaged in the acquisitions to

6   be able to "rapidly deliver a complete digital current [sic] solution to [NCR]

7   customers, including the ability to buy and sell cryptocurrency … and accept digital

8   currency payments across digital and physical channels." (¶ 30).  Accordingly, NCR

9   did not compete with either Cardtronics or LibertyX in crypto ATM when it

10  acquired them.  This means any agreement or acquisition between LibertyX,

11  Cardtronics, and NCR cannot be horizontal, as Plaintiff alleges, and can only be

12  vertical.  *Tomac, Inc. v. Coca-Cola Co*., 418 F.Supp. 359, 362 (C.D. Cal. 1976).

13       Vertical integration is generally procompetitive, because it generates efficiencies

14  and tends to lead to lower prices.  *Nat'l Fuel Gas Supply Corp. v. FERC*, 468 F.3d.

15  831, 840 (D.C. Cir. 2006); *see also* Phillip E. Areeda & Herbert Hovenkamp,

16  *Antitrust Law: An Analysis of Antitrust Principles and Their Application*, ¶1133a

17  (4th and 5th Editions 2015-2021) ("Given the limited grounds for objecting to most

18  vertical mergers, it would be appropriate to presume that the procompetitive gains

19  from new entry outweigh any harmful vertical effects.").  In fact, Plaintiff

20  acknowledges that the acquisitions create an efficiency: "consolidating all of the

21  services typically performed by multiple entities."  (FAC ¶ 13).  Because of the

22  efficiencies created, courts have repeatedly held that vertical integration, absent

23  substantial market power, cannot violate the antitrust laws.  *United States v.*

24  *Columbia Steel Co*., 334 U.S. 495, 525-26 (1948) (holding that "vertical integration,

25  as such without more, cannot be held violative of the Sherman Act").  As discussed

26  in detail below, NCR did not even participate in the crypto-ATM market prior to the

27  acquisitions and Plaintiff has pled nothing to show NCR acquired substantial power

28  within the alleged market merely through those transactions.

### 3.   Plaintiff Has Not and Cannot Plead an Illegal Agreement Involving NCR.

To sustain a Sherman or Clayton Act conspiracy to monopolize claim or any Cartwright Act claim, as alleged in Counts 6-9, 11, and 12, Plaintiff must plead an illegal agreement involving NCR. *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.,* No. 17-CV-5005-LB, 2017 WL 6059299, at \*4-5 (N.D. Cal. Dec. 7. 2017) (conspiracy to monopolize requires, among other things, agreement to monopolize); *see also GreenCycle Paint, Inc. v. PaintCare, Inc*., 250 F. Supp. 3d 438, 447 (N.D. Cal. 2017) (Cartwright Act claim requires "(1) the existence of an agreement, and (2) that the agreement was in unreasonable restraint of trade.'") (citation omitted). As discussed above, NCR's acquisitions of Cardtronics and LibertyX cannot violate the antitrust laws, so neither can be the required illegal agreement.

Plaintiff tries to insinuate that NCR was somehow involved in LibertyX and Cardtronics' decisions to terminate before the acquisitions. Conclusory allegations that NCR "directed" Cardtronics and LibertyX do not suffice to plead an illegal agreement involving NCR. In short, to support an antitrust claim, Plaintiff must allege sufficient specific facts to show that NCR was involved in the termination decisions in a way that would violate the antitrust laws, and Plaintiff has failed to do so. *See Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1129 (9th Cir. 2015) ("It is not enough merely to include conclusory allegations that certain actions were the result of a conspiracy; the plaintiff must allege facts that make the conclusion plausible.").

This is particularly true where, as here, the allegations track with an innocent explanation, but "do not tend to exclude the innocent explanation." *GreenCycle Paint, Inc.*, 250 F. Supp. 3d at 446-47. The few facts Plaintiff does allege – the terminations, the acquisitions – add up easily to several courses of conduct that do not violate the antitrust laws, none of which Plaintiff offers a single fact to refute.

For example, Cardtronics and LibertyX could simply have decided independent of NCR to stop doing business with Plaintiff and find a new partner, given that the decisions occurred months before the acquisitions.  Furthermore, NCR could have simply decided (or even made no conscious decision) to continue operating the two companies as they were operating when NCR acquired them in August 2021 and January 2022, *i.e*., without Plaintiff's business. Alternatively, Cardtronics, LibertyX and NCR could have jointly decided to terminate the contracts in anticipation of running the business without USAG, which contrary to USAG's suggestion, does not actually violate the antitrust laws, as discussed below. None of these scenarios suffices to state an antitrust violation, and because the Complaint does not show that some illegal interpretation is more likely, the claims fail as a matter of law.

### 4.      Plaintiff Has Failed to Plead a Plausible Relevant Market.

To plead a viable antitrust claim under the Sherman, Clayton, or Cartwright Acts, Plaintiff must plead a plausible relevant market that is not "facially unsustainable." [3] *Dang v. S.F. Forty Niners*, 964 F. Supp. 2d 1097, 1104 (N.D. Cal. 2013) (Sherman and Cartwright Acts); *see California v. Sutter Health Sys.*, 130 F. Supp. 2d 1109, 1118 (N.D. Cal. 2001) (Clayton Act Section 7 claims).  A properly-pled relevant market contains "the product at issue as well as all economic substitutes for the product."  *In re German Automotive Manufacturers Antitrust Litigation*, 497 F. Supp. 3d 745, 756-57 (N.D. Cal. 2020).  "[A] plausible market requires . . . facts explaining why seemingly similar products excluded from the market are not substitutes for those in the market."  *Reilly v. Apple Inc.*, No. 21-cv-04601-EMC, 2022 WL 74162, at *6 (N.D. Cal. Jan. 7, 2022).  Plaintiff's "crypto

---

[3] "[A] plaintiff . . . must delineate a relevant market and show that the defendant plays enough of a role in that market to impair competition significantly." *Bhan v. NME Hosps., Inc.,* 929 F.2d 1404, 1413 (9th Cir. 1991).  Given that NCR did not even have a "foothold" in crypto ATM, Plaintiff cannot plausibly claim NCR plays enough of a role to "impair competition significantly."

ATM market" fails to meet these standards.

Plaintiff references a multitude of products and services allegedly implicated here: crypto ATM machines, frontend, and backend processing, "cryptocurrency software," and "a complete digital currency solution to customers." (FAC ¶¶ 28, 39-40). Based on these allegations, Plaintiff's "crypto ATM market" seems to be an amorphous soup of products and services provided to merchants and/or consumers related to purchasing of cryptocurrency through ATMs, with no allegations as to whether an actual consumer would consider those items substitutes. Plaintiff does not explain how these different products and services are substitutes. Nor does Plaintiff explain how products and services targeted to merchants (processing) can share a market with products and services targeted to consumers (buying cryptocurrency at an ATM). The "crypto ATM market" therefore fails as a matter of law. *Reilly*, 2022 WL 74162, at *6.

Moreover, Plaintiff's own allegations suggest that the relevant market may be far broader than any products or services related to ATMs. Consumers can buy and sell cryptocurrency through a variety of different means. As Plaintiff admits, Liberty X's "digital currency solution runs on ATMs, kiosks and point-of-sale (POS) systems today." (FAC ¶ 32). Plaintiff further quotes NCR as planning to develop a digital currency solution "including the ability to buy and sell cryptocurrency … and accept digital currency payments across digital and physical channels." (¶ 30). Plaintiff offers no allegations explaining why these other methods are not substitutes for cryptocurrency transactions done through ATMs, as they must to plead a plausible relevant market. *Reilly*, 2022 WL 74162, at *6. For all these reasons, Plaintiff's alleged "crypto ATM market" is facially implausible, meaning that all of Plaintiff's antitrust claims fail as a matter of law.

### 5.   Plaintiff Does Not Allege the Elements of Monopolization and Attempted Monopolization Claims.

Counts 8, 9, 11, and 12 allege that NCR has acquired and maintained a

monopoly, or in the alternative, has attempted to acquire or maintain a monopoly[4] in an alleged "crypto ATM market."  A monopolization claim requires allegations that NCR has monopoly power in a plausible relevant market, while an attempted monopolization claim requires allegations of a "dangerous probability of achieving monopoly power" in that market.  *DocMagic, Inc. v. Ellie Mae, Inc.,* 745 F. Supp. 2d 1119, 1134 (N.D. Cal. 2010).  The Complaint fails on both counts.

Even if Plaintiff's relevant market made sense, Plaintiff has failed to plead monopoly power.  The Complaint alleges that NCR has monopoly power "in the full-service crypto-ATMs market in California." (FAC ¶ 138), but this claim is contradicted by other allegations. Plaintiff makes conclusory allegations that before the acquisitions, NCR was "a prominent player in the global ATM market with an existing dominant ATM market share in the USA," (FAC ¶ 9), but as Plaintiff alleges, even then, NCR had "**no foothold**" in crypto ATMs.  (FAC ¶ 31).  Plaintiff's own allegations therefore show that not all ATMs are crypto-ATMs, and more importantly, that NCR's ATMs were not crypto-ATMs.  Accordingly, even if true, NCR's alleged "existing dominant market share" in ATMs would not support an allegation of monopoly power in a California "crypto ATM" market.

Plaintiff also does not make any specific allegations as to any NCR market share in a "crypto-ATM" market post-acquisition.  Plaintiff alleges that LibertyX held a relatively small number of crypto-ATM merchant accounts, (FAC ¶ 10), but those alone could not give NCR monopoly power.  As for Cardtronics, Plaintiff does not actually allege that Cardtronics operates crypto ATMs, only that it provides processing services for LibertyX crypto ATMs (FAC ¶ 8).  Plaintiff provides no numbers at all for crypto ATMs operated by Cardtronics, only for Cardtronics' total

---

[4] To the extent Plaintiff claims the allegedly illegal conduct occurred before the Cardtronics and LibertyX transactions, it also cannot establish that NCR had monopoly power or a dangerous probability of acquiring monopoly power because, by Plaintiff's own admission, NCR had "no foothold" in the market at that time. (FAC ¶ 31).

1    global ATM business.  As discussed above, not all ATMs are crypto ATMs, so
2    Plaintiff's allegations with respect to numbers of ATMs or market share in an ATM
3    market cannot show that NCR has any market power in a "crypto ATM market," let
4    alone a monopoly.

5         Plaintiff also tries to claim that NCR has monopoly power in crypto-ATMs
6    due to NCR's alleged ability to "set prices for crypto-ATM transactions, control
7    prices, and exclude competitors like USAG" and by "artificially inflating the rates
8    and fees that it charges to consumers." (FAC ¶138 a, c). First, the ability of a
9    company to set prices for the products or services it provides does not constitute
10   monopoly power.  *Prime Healthcare Servs., Inc. v. Service Emps. Int'l Union*, No.
11   11-CV-2652-GPC-RBB, 2013 WL 3873074, at *14-15 (S.D. Cal. July 25, 2013).
12   Second, even if this Court accepted the bald and conclusory allegations that NCR
13   was involved in terminating Plaintiff's contracts, Plaintiff's allegations that it has
14   been "cut out" of its existing contracts with Cardtronics and LibertyX do not show
15   market exclusion.  Plaintiff does not allege facts sufficient to show that it has been
16   foreclosed from the market.  Plaintiff does not allege that it tried to form contracts
17   with other crypto-currency ATM operators and has been unable to do so due to
18   anything NCR did.  Plaintiff has alleged nothing more than the loss of existing
19   contracts, which standing alone, does not demonstrate that a competitor has
20   monopoly power.

21        Nor can Plaintiff support its allegation that NCR has "artificially inflated the
22   rates and fees it charges to consumers." (FAC ¶¶ 112, 114, 124, 138).  Nowhere
23   does Plaintiff make any specific allegations as to the amounts of NCR's fees or
24   rates, let alone information sufficient to plead that NCR has set any rates at
25   artificially high levels.  Conclusory allegations of artificially inflated prices do not
26   suffice to allege monopoly power.  *Intel Corp. v. Fortress Inv. Grp. LLC*, 511 F.
27   Supp. 3d 1006, 1023 (N.D. Cal. 2021), *appeal filed*, No. 21-16817 (9th Cir. Oct. 28,
28   2021).  Taken together, Plaintiff's allegations do not support a conclusion that NCR

1   has monopoly power, meaning Plaintiff's monopolization claims fail.  *See*, *e.g.*,

2   *Prime Healthcare Servs., Inc.*, 2013 WL 3873074, at *15 (refusing to conclude that

3   defendant possessed market power absent allegations showing a restriction in

4   output, supracompetitive prices, and a dominant share of the relevant market).

5        Plaintiff cannot sustain its attempted monopolization claims because Plaintiff

6   fails to plead that NCR has a dangerous probability of acquiring monopoly power.

7   As discussed above, Plaintiff's specific allegations focus on the ATM market only,

8   not the undefined crypto-ATM market Plaintiff alleges.  Plaintiff makes no

9   allegations tending to show that NCR has a dangerous probability of going from "no

10   foothold" in crypto-ATM to monopolizing that space.  Plaintiff's allegations that

11   NCR has engaged in anticompetitive conduct cannot fill the gap.  *Spectrum Sports,*

12   *Inc. v. McQuillan,* 506 U.S. 447, 459 (1993) (dangerous probability of success

13   element is "plainly not met by inquiring only whether the defendant has engaged in

14   'unfair' or 'predatory' tactics.").  Accordingly, Plaintiff's attempted monopolization

15   claim fails as a matter of law.

16         **6.**     **Any Claims Involving the Doe Defendants Are Deficient.**

17        To sustain Cartwright Act and Sherman Act conspiracy claims, including

18   conspiracies to monopolize, Plaintiff must plead an agreement between a

19   multiplicity of actors.  *Asahi Kasei Pharma Corp. v. CoTherix, Inc.*, 204 Cal. App.

20   4th 1, 10-12 (2012) ; *GDHI Mktg. LLC v. Antsel Mktg. LLC*, 416 F. Supp. 3d 1189,

21   1205 (D. Colo. 2019).  Plaintiff pleads Counts 5-9, 11, and 12 as against NCR and

22   "DOES 1-25," but nowhere does Plaintiff provide any information about the "Does"

23   that would give NCR adequate notice of the conspiracy claim.  *Newport*

24   *Components, Inc. v. NEC Home Elecs (U.S.A.), Inc.*, 671 F. Supp. 1525, 1546 (C.D.

25   Cal. 1987) ("Merely adding unidentified participants . . . does not provide

26   defendants with adequate notice of [plaintiff's] conspiracy claim").  If, as in the

27   original complaint, the Does are "agent, servant, employee, partner, joint venturer,

28   representative, subsidiary, parent, affiliate, alter ego" of NCR or "NCR senior

1    corporate executives and managing agents," they do not qualify as separate persons

2    as a matter of law, so the Court must dismiss any federal antitrust conspiracy or

3    Cartwright Act claims involving the Doe defendants. *Copperweld Corp. v. Indep.*

4    *Tube Corp.*, 467 U.S. 752, 777 (1984); *Asahi Kasei Pharma Corp.*, 204 Cal. App.

5    4th at 10-12; *see also In re Netflix Antitrust Litig.*, 506 F. Supp. 2d 308, 320 (N.D.

6    Cal. 2007).

7
               **7.    Plaintiff's Unfair Competition Claim Fails Because It Has**
8                     **Other Adequate Remedies at Law And Plaintiff Has Failed**
                      **To Plead Facts Sufficient To State A Claim.**
9

10       Plaintiff's UCL claim, Count 5, should be dismissed for several reasons.

11   First, this claim must be dismissed because Plaintiff has other adequate remedies at

12   law.  "The UCL limits the remedies available for UCL violations to restitution and

13   injunctive relief." *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 452 (2005).[5]

14   A plaintiff in California may only seek equitable relief where no adequate remedy at

15   law exists. *Philips v. Ford Motor Co.*, No. 14-CV-2989-LHK, 2015 WL 4111448, at

16   *16 (N.D. Cal. July 7, 2015).  In its Complaint, Plaintiff seeks treble damages for

17   alleged antitrust violations, meaning it cannot seek equitable relief under the UCL.

18   This is true even in cases where, as here, the claims seeking non-equitable relief

19   may not survive a motion to dismiss. *See Rhynes v. Stryker Corp.*, No. 10-5619 SC,

20   2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011) ("Where the claims pleaded by a

21   plaintiff *may* entitle her to an adequate remedy at law, equitable relief is

22   unavailable.").

23       Plaintiff's UCL claim also fails because it failed to plead facts sufficient to

24   sustain the claim as a matter of law. The UCL prohibits companies from engaging

25
     ─────────────────────
26   [5] Plaintiff's UCL claim seeks "injunctive relief, restitution, and disgorgement."
     However, the California Supreme Court has held that individual plaintiffs cannot
27   recover money damages under the UCL, meaning the Court must strike claims for
     restitution and disgorgement under its UCL claim. *Kor. Supply Co. v. Lockheed*
28   *Martin Corp.*, 29 Cal. 4th 1134, 1152 (Cal. 2003).

1   in any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof.

2   Code § 17200; *see also Cel-Tech Commc'ns*, 20 Cal. 4th at 180. Plaintiff has not

3   plead facts sufficient to show that NCR has engaged in any unlawful, unfair or

4   fraudulent business conduct.

5         Plaintiff must plead facts "sufficient to show a violation of some underlying

6   law" to sustain an "unlawful" UCL claim, which it has not done. *Jackson v. Ocwen*

7   *Loan Servicing, LLC*, No. 2:10-cv-00711-MCE-GGH, 2010 WL 3294397, at *4

8   (E.D. Cal. Aug. 20, 2010). As shown here, all of the other legal claims in the

9   Complaint are deficient as a matter of law, so Plaintiff cannot show that NCR has

10   engaged in unlawful conduct sufficient to support a UCL claim. *Briosos v. Wells*

11   *Fargo Bank*, 737 F. Supp. 2d 1018, 1033 (N.D. Cal. 2010).

12        Plaintiff similarly fails to allege a claim under the "unfair" prong of the UCL,

13   because "where the same conduct alleged to be unfair under the UCL is also alleged

14   to be a violation of another law, the UCL claim rises or falls with the other

15   claims." *Hicks v. PGA Tour, Inc.*, 165 F. Supp. 3d 898, 911 (N.D. Cal. Feb. 9,

16   2016), *aff'd in part, vacated in part*, 897 F.3d 1109 (9th Cir. 2018). This means that

17   where, as here, the conduct allegedly supporting the UCL claim completely overlaps

18   with the conduct underpinning plaintiff's other claims, the UCL claim fails when

19   those claims fail. *See*, *e.g.*, *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363 (2001)

20   (affirming dismissal of UCL claims where alleged conduct was lawful).

21        Finally, the Complaint fails the heightened pleading standard of Fed. R. Civ.

22   P. 9(b) which is applicable to the UCL fraud claim. *Kearns v. Ford Motor Co.*, 567

23   F.3d 1120, 1125 (9th Cir. 2009). A fraud claim must be pled "with a high degree of

24   meticulousness." *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000).

25   Specifically, "plaintiff must include statements regarding the time, place, and *nature*

26   of the alleged fraudulent activities . . . . The plaintiff must set forth what is false or

27   misleading about a statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*,

28   42 F.3d 1541, 1547-48 (9th Cir. 1994). The Complaint utterly fails to meet this

standard and, as with its other UCL claims, Plaintiff cannot sustain a claim based on the UCL's fraud prong.

## C. PLAINTIFF'S REMAINING STATE LAW CLAIMS FAIL AS A MATTER OF LAW.

Plaintiff's remaining state law claims, Counts 1 through 4 and 10, also fail as a matter of law.  Simply put, the allegations in the Complaint fall well short of sufficiently alleging each claim.

### 1. Counts One And Two Fail To State A Claim.

Plaintiff's claims for intentional and negligent interference with prospective economic relations fail for several reasons, including that facts alleged relating to NCR cannot support these claims.

To maintain a claim for intentional interference with prospective economic relations, Plaintiff must plead: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Khalil v. Allstate Ins. Co.*, No. 2:20-CV-09409-MCS-JEM, 2021 WL 8315159, at *4 (C.D. Cal. June 28, 2021) (quoting *Marsh v. Anesthesia Servs. Med. Grp., Inc.*, 200 Cal. App. 4th 480, 504 (2011)).

To maintain a claim for negligent interference with prospective economic relations, Plaintiff must allege facts showing that NCR owed it a duty.  *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615 (N.D. Cal. 2002) (applying California law). Specifically, Plaintiff must allege facts showing that "(1) an economic relationship existed between the plaintiff and a third party which contained a reasonable probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and

1   cause plaintiff to lose in whole or in part the probable future economic benefit or

2   advantage of the relationship; (3) the defendant was negligent; and (4) such

3   negligence caused damage to the plaintiff in that the relationship was actually

4   interfered with or disrupted and the plaintiff lost in whole or in part the economic

5   benefits or advantage reasonably expected from the relationship." *GENFIT S. A. v.*

6   *CymaBay Therapeutics Inc.*, No. 21-CV-00395-MMC, 2022 WL 195650, at *4

7   (N.D. Cal. Jan. 21, 2022) (quoting *N. Am. Chem. Co. v. Super. Ct.*, 59 Cal. App. 4th

8   764, 786 (1997)).

9           The Complaint alleges nothing more than legal conclusions in support of

10  these Counts. Plaintiff wholly fails to allege facts tending to show that NCR was

11  aware of Plaintiff's relationship with Cardtronics and LibertyX; that NCR was

12  aware or should have been aware that if it did not act with care its acquisitions

13  (which closed months after the end of the relevant business relationships) would

14  interfere with such relationships (which had already ended); that NCR did anything

15  to interfere in those relationships (intentionally or negligently); or that any act by

16  NCR resulted in any actual disruption of the relationship that caused or proximately

17  caused Plaintiff's alleged harm.  Nor has Plaintiff alleged facts showing that NCR

18  owed it any duty of care.  To the contrary, Plaintiff alleges that NCR did not have

19  any relationship with it and did not participate in the business or market from which

20  Plaintiff's claims arise. *See W. Air Charter, Inc. v. Sojitz Corp.*, No. 18-CV-7361-

21  JGB (KSX), 2019 WL 4509304, at *17 (C.D. Cal. May 2, 2019) (finding that

22  plaintiff "allege[d] no facts concerning Defendants' duty of care" where defendants

23  set up a competing venture).

24          Further, Plaintiff fails to allege facts showing "that the conduct alleged to

25  constitute the interference was independently wrongful, i.e., unlawful for reasons

26  other than that it interfered with a prospective economic advantage." *Crown Imps.,*

27  *LLC v. Superior Ct.*, 223 Cal. App. 4th 1395, 1404–05 (2014); *see also Lange v.*

28  *TIG Ins. Co.*, 68 Cal. App. 4th 1179, 1188 (1998).  The only factual conduct that

1   Plaintiff alleges regarding NCR is that it acquired two companies that had already

2   stopped doing business with Plaintiff for reasons of their own.  There is nothing

3   wrongful about that and Plaintiff has not alleged facts showing otherwise.

4   Moreover, the alleged conduct is privileged as competitive conduct. *See Bed, Bath*

5   *& Beyond of La Jolla, Inc. v. La Jolla Vill. Square Venture Partners*, 52 Cal. App.

6   4th 867, 882 (1997) (granting summary judgment for defendant where it "merely

7   competed successfully" by getting a better deal); *see also Drink Tank Ventures LLC*

8   *v. Real Soda in Real Bottles, Ltd*., 71 Cal. App. 5th 528, 539 (2021) (holding that the

9   "privilege of free competition" protects a party that entices a third party away from

10  plaintiff absent independently wrongful conduct).

11       Accordingly, the Court should dismiss Counts 1 and 2. *See Kor. Supply Co.*,

12  29 Cal. 4th at 1158–1159 (holding that this tort "is not intended to punish . . .

13  commercial entities for their choice of commercial relationships or their pursuit of

14  commercial objectives" absent "independently actionable conduct.").

15       **2.      Counts Three and Four Fail To State A Claim.**

16       Plaintiff's claims for unlawful conversion and civil theft fare even worse.

17  "The elements of a conversion are the plaintiff's ownership or right to possession of

18  the property at the time of the conversion; the defendant's conversion by a wrongful

19  act or disposition of property rights; and damages." *Soundgarden v. UMG*

20  *Recordings*, Inc., No. 2:19-CV-05449-JAK-JPR, 2020 WL 1815855, at *21 (C.D.

21  Cal. Apr. 6, 2020) (quoting *Oakdale Vill. Grp. v. Fong*, 43 Cal. App. 4th 539, 543-

22  44 (1996)). This Complaint plainly presents no such circumstances.

23       Plaintiff does not specifically allege what property interest that it owned or

24  possessed that anyone, much less NCR, supposedly converted.  While Plaintiff

25  variously and inconsistently alleges that it possessed some-type of "5% contractual

26  interest" in Liberty X, these allegations are insufficient. (FAC ¶¶ 29, 52, 58, 64);

27  *Soundgarden*, 2020 WL 1815855, at *21 ("[A] mere contractual right of payment,

28  without more, does not entitle the obligee to the immediate possession necessary to

establish a cause of action for the tort of conversion."); *Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1058 (N.D. Cal. 2021) ("A generalized claim for money is not actionable as conversion unless there is a specific, identifiable sum involved."). Nor can the allegation that Plaintiff's LibertyX contracts were converted suffice. *See Expedited Packages, LLC v. Beavex Inc.*, No. 15-CV-00721-MMM-AGR, 2015 WL 13357436, at *4 (C.D. Cal. Sept. 10, 2015). Plaintiff's shotgun attempt to allege property in support of this claim relies heavily on contractual rights. (FAC ¶90). While Plaintiff obliquely refers to a proprietary portfolio and information, Plaintiff alleges no facts showing that it owned a portfolio that can be considered property or that anyone converted it. In addition, the Complaint does not allege any facts, as opposed to general conclusions, that NCR did anything wrongful regarding any legally cognizable property of Plaintiff's or that caused Plaintiff some specific damage. Plaintiff's conversion claim should be dismissed.

Plaintiff's civil theft claim should also be dismissed. Plaintiff has wholly failed to allege facts showing that NCR "committed theft as defined by" California criminal law. *GEC US 1 LLC v. Frontier Renewables, LLC*, No. 3:16-cv-01276 YGR, 2016 WL 4677585, at *9 (N.D. Cal. Sept. 7, 2016). The Complaint alleges no facts showing that NCR acted with "specific intent to steal," as required. *Id.* (dismissing civil theft claim because claim does not "redress ordinary business disputes over ownership interests"). The Complaint is similarly bereft of facts alleging any of the other required elements of a civil theft claim. *See Best Fresh LLC v. Vantaggio Farming Corp.*, No. 3:21-CV-00131-BEN-WVG, 2021 WL 5444755, at *12 (S.D. Cal. Sept. 20, 2021) (quoting California criminal theft statute). Plaintiff merely alleges the consequences of Cardtronics and LibertyX ending their business relationships with Plaintiff. Plaintiff nowhere alleges how it lost any business or other interest in LibertyX, much less as a result of any NCR conduct.

### 3.   Count Ten Fails To State A Claim.

Plaintiff's constructive trust claim must be dismissed. A "constructive trust is not a cause of action, but a remedy." *Arouchian v. Bank of Am., N.A.*, No. 12-CV-1028-PSG(DTBx), 2012 WL 12897038, at *3 (C.D. Cal. Oct. 11, 2012) (dismissing cause of action) (citing *Calistoga Civic Club v. Calistoga*, 143 Cal. App. 3d 111, 117 (1983)); *see also Lund v. Albrecht*, 936 F.2d 459, 464 (9th Cir. 1991) ("[A] constructive trust is a remedial device, not a substantive claim on which to base recovery."). Because Plaintiff's claims fail as a matter of law, its claim for a constructive trust also should be dismissed.  *See Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*, No. 17-CV-03805-LHK, 2018 WL 1805516, at *11 (N.D. Cal. Apr. 16, 2018) ("California courts dismiss counts that plead a constructive trust as a cause of action rather than a remedy.").  In any event, Plaintiff has not plead sufficient facts to show any entitlement to equitable relief such as a constructive trust. *See Mattel, Inc. v. MGA Ent., Inc.*, 616 F.3d 904, 909 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) (constructive trust elements).

### III.   CONCLUSION.

For all of the foregoing reasons, the Court should dismiss the Complaint with prejudice in this case.


DATED:  June 17, 2022          Respectfully submitted,

                                                          KILPATRICK TOWNSEND & STOCKTON LLP


                                                          By:    /s/Douglas W. Gilfillan
                                                          _____

                                                          Attorneys for Defendant
                                                          NCR CORPORATION